**AIRCRAFT & ENGINE MAINTENANCE & OVERHAUL, BUILDING, CONSTRUCTION, MANUFACTURING, PROCESSING AND DISTRIBUTION AND ALLIED INDUSTRIES EMPLOYEES, LOCAL 290, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Appellant,**

**v.**

**OOLITE CONCRETE COMPANY, Appellee.**

**No. 21198.**

United States Court of Appeals Fifth Circuit.

Feb. 2, 1965.

Seymour A. Gopman of Kastenbaum, Mamber, Gopman & Epstein, Miami Beach, Fla., for appellant.

John Bacheller, Jr., Atlanta, Ga., Garth A. Webster, Miami, Fla., Erle Phillips, Atlanta, Ga., Taylor & Brion, Miami, Fla., and Fisher & Phillips, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, and MOORE * and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from a jury verdict and judgment against the appellant Local for damages for violation of Section 303

* Of the Second Circuit, sitting by designation.

of the Labor Management Relations Act, 29 U.S.C.A. § 187.[1]

The gist of the offense is stated in the complaint as follows:

"This is a suit for damages resulting from the activities of defendant labor organization in inducing and encouraging individuals employed by persons engaged in commerce, or in an industry affecting commerce, to engage in a strike and a refusal in the cause of their employment to use, process, or otherwise handle materials or to perform any services with an object of forcing and requiring John A. Volpe Construction Company, Prahl Bros. Construction Company, Millman Construction Company, et al, to cease using the products of plaintiff and to cease doing business with plaintiff."

Two questions are raised on this appeal. The first is whether the failure of the National Labor Relations Board to proceed on an unfair labor practice charge arising out of this same conduct is res judicata and thus a bar to the action; the second question is whether there was sufficient evidence to warrant submission of the case to the jury, it being contended by the appellant that it was entitled to a directed verdict at the conclusion of the evidence, and, in the alternative, for a judgment notwithstanding the verdict.

■ This Court has dealt with the question of res judicata when the Labor Board declines to proceed with an unfair labor practice charge in the case of Aircraft & Engine Maintenance, etc. v. E. I. Schilling Company, 5 Cir., 340 F.2d 286, decided January 12, 1965. We concluded there that the right of the employer to file such suit as is here before us is not affected by the circumstance that the Labor Board declines to proceed with an unfair labor practice charge. This disposes of that contention here.

■ We turn next to the question of the sufficiency of the evidence to warrant submission of the case to the jury. This case is quite similar to the Schilling case referred to above. In fact the appellant says in its brief:

"The case is identical to [the Schilling case] presently pending before this Court * * * The incidents which led to the institution of that suit occurred approximately one month prior to the acts complained of in the complaint as the basis for the damages in the instant case. Both cases involve the same relevant issues of law and fact, and though not companion cases, are certainly related."

In the Schilling case this Court held that the verdict of the jury was amply supported by the evidence. While the evidence there was somewhat different from that presented to the jury here, with respect to one large work stoppage, nevertheless we think it plain that there was sufficient evidence here from which the jury could infer that an object of the picketing at several of the common sites was the prohibited one of coercing other

1. That section makes it unlawful to commit an unfair labor practice as defined in section 8(b) (4), of the Labor Management Relations Act, as amended, makes it an unfair labor practice for a union or its agents:

"(i) to engage in, or to induce or encourage any individual employed by any persons engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object there of is—

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person * * * Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing * * *." 29 U.S.C.A. § 158(b) (4) (B).

employers from continuing their business relations with the appellee.

Pickets for the appellant, while picketing the principal plants or places where the concrete was mixed, sporadically, also picketed several pouring sites where the mixed concrete was being poured on the jobs of the several other employers mentioned in the complaint. In each instance, when the pickets appeared there was a work stoppage by the employees of other crafts engaged on the job. In each instance it was necessary for Oolite to stop deliveries with its non-union drivers.

One circumstance which the jury could consider as showing an intent that the picketing should produce the result that it actually brought about rather than that it was for a legal purpose was: at one location the pickets were not within sight of the Oolite employees who were the only proper target of the signs carried by the pickets. Dealing with a subject similar to this in Brown Transport Corp. v. NLRB, 5 Cir., 334 F.2d 30, we said:

"Picketing that has the effect of interfering with the work of neutral third parties, and which can not have the effect of appealing to the employees of the primary employer can have no other purpose than that which was actually achieved here in blocking the entrance and exit * * to all other truckers."

Another circumstance was that, as was the fact in the case of Schilling, supra, the pickets did not continue picketing at the site of jobs where their presence did not cause an interruption of the work by employees of other employers. A third circumstance was that pickets were not placed at some sites where Oolite was delivering concrete where there were no other employees present to be made the target of the picketing. Finally, it was stated by witnesses for the appellant that the most suitable place for reaching the drivers of Oolite Concrete Company was at the plants of the company, but the record discloses that none of the pickets were present at these primary sites at the time when the drivers left on their first trips in the morning.

Appellee also stresses the fact that the record is silent as to any efforts made by appellant or its pickets to prevent the work stoppages which appellant contended were the unintended result of its actions. Here there is no doubt of the effect that the pickets had on secondary employers. They effectively broke up the relationship between the general contractors on the jobs and Oolite Concrete Company so long as they continued in their picketing activities at the common sites. In Superior Derrick Corporation v. NLRB, 5 Cir., 273 F.2d 891, dealing with this problem, we stated:

"[I]f there is an expectation or a hope or a desire that employees of the secondary employer will be induced or encouraged to take considered action so that the secondary employer will cease doing business with the primary employer, then the Act bars that activity. * * * The activity, including the picket line, must be conducted in such a way that the normal appeal of a picket line is overcome. It must be done so that all secondary employees will know that the primary union does not seek what the law forbids— pressure on the primary employer through pressure from the secondary employer because of concerted pressure by secondary employees on that secondary employer." 273 F.2d 891, 897.

We think it clear that the jury here could infer from the course of conduct which has been outlined above that there was at least "an expectation or a hope or a desire that employees" of the other crafts engaged on these several jobs would take the action which they actually did take—that is to quit working behind the picket signs.

It was, therefore, not error for the trial court to submit the issue to the jury whose finding is determinative of the question.

There is no merit in the contention that the trial court refused to give the

requested charge which, in effect, would state that so long as the appellant did no more than observe the criteria known as the Moore Dry Dock criteria, 92 NLRB 547, there was a presumption that the picketing was legal. The requested charge was not an accurate statement of the law to be given to the jury, since it was entirely too broad. The charge, as given, was adequate and without error.

The judgment is affirmed.